PORTER et al., *Appellants*, v. MERRILL.

<div style="border:1px solid">138  555<br>82a 617</div>

### Division Two, April 3, 1897.

[For the main facts governing this case, see *Porter v. Woods*, *ante*, p. 539.]

1. **Principal and Agent:** AGENT PERSONALLY LIABLE. When an agent contracts with third parties and does not disclose the name of his principal, he is personally liable on the contract.

2. ——: ——. An agent who, upon receipt of a written declaration of trust from a third party with whom he has been dealing through a sub-agent, does not disclaim the declaration, nor return the same, nor notify the third party of his agency, is personally bound thereby.

3. ———: SUB-AGENT: NOTICE OF AGENCY. An agent disclosed the name of his principal to one who was acting as his sub-agent for the purchase of property and who was also the agent of the party selling the property. The property, for convenience, was conveyed to a disinterested third party. *Held:* That this notice of agency to the sub-agent, was no notice thereof to the third party so taking the property.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

REVERSED AND REMANDED.

*Peak & Ball* for appellants.

(1) Defendant is liable, having acted in his own name without disclosing his principal, and having expressly pledged his own credit for the performance of the promise contained in the declaration of trust. 1 Am. and Eng. Ency. Law, 402, 403, and cases cited. (2) Defendant certainly invested the money of Mrs. Smith. It is equally certain that he did not say or intimate any such thing to Moore, or Oliphant, or plaintiff, until after the suit was filed. He kept the declaration which said he was the owner of a tenth. He treated with the parties as owner at various times. He said he was the owner in the contract for division in October, 1890. No doubt, he could prevent the conveyance of this tenth to Mrs. Smith unless she assumed this obligation which as her agent he personally incurred. The authorities are conclusive on this. We need only cite the clear expression of the rule by Judge GANTT in *Hamlin v. Abell*, 120 Mo. 188 (198): "If an agent would bind only his principal, it is his duty to disclose him. It is in his power always to do this, and when he fails to do so, it must be taken that he intends to bind himself."

*C. O. Tichenor* for respondent.

(1)   The money which was invested in this land was the money of Mrs. Smith; not one cent of it belonged to Merrill, yet appellant takes the strange position that this fact should not be considered; that it makes no difference whose money went into it.   Judge SHERWOOD says, in *Shaw v. Shaw*, 86 Mo. 598: "But aside from any question of fiduciary relations, the evidence is sufficient to establish a resulting trust in behalf of the plaintiff.   Such trusts are not within the statute of frauds (R. S., sec. 2512; *Groves v. Fulsome*, 16 Mo. 543; *Cason v. Cason*, 28 Mo. 47), and parole evidence may, therefore, be used to establish them.   It is true, such evidence must be well nigh conclusive in its character; but the main point, the controlling question in inquiries of this nature, is the ownership of the purchase money."   (2) As a matter of law Oliphant was a trustee for Mrs. Smith and this he can not deny. A trustee can not disown the beneficiary.   If he can do so, he can destroy the trust, for certain it is that if he is not the trustee for Mrs. Smith, he is not a trustee at all, but is the owner.   (3)   The declaration was no deed; Merrill got no title by it; he was not a purchaser; he had no interest in the land; it made no difference to him whether the incumbrance on it was paid or not; more than this had he paid the money, he could have got no title, for if the trustee had made him a deed of Mrs. Smith's interest, he would have violated his trust by so doing.   Oliphant has never even offered to convey; indeed it is not known whether he is in condition to do so. *Olmstead v. Smith*, 87 Mo. 602.   And we call attention to the fact that there was no need for these declarations of trust, as the little books issued at the time of the purchase were such.

BURGESS, J.—This case grew out of the same transaction as did the preceding case of *Porter et al. v. Woods*, decided at the present term, and reported in this volume at page 539, and the facts are very much the same, the only substantial difference being in the amount involved, and in this case the defendant claims to have been acting throughout the entire transaction as the agent of one Mrs. Augusta S. Smith, with the knowledge of W. S. Woods of the firm of Woods, Mellier & Co., and Robert N. Oliphant, who took the title, and executed the declaration of trust sued upon. He disclaims any interest in the property. The *Woods* case is decisive of this upon all questions involved in this litigation with the exception of the personal liability of defendant on the assumption clause in the declaration of trust.

It is well settled that when an agent contracts with third parties in his own name, and does not disclose his principal he is personally liable upon the contract. *McClellan & Hillyer v. Parker*, 27 Mo. 162; 1 Am. and Eng. Ency. of Law, 402. If the agent would avoid being personally responsible he must disclose his principal at the time of, or before, entering into the contract.

In this case the evidence showed that Will S. Woods knew that defendant was acting as agent of Mrs. Smith in the purchase of the property, although all business transactions in regard thereto were in his own name, but it did not show that either Oliphant or Moore knew that he was the agent of Mrs. Smith, or that he was acting in that capacity. He was one of the syndicate that purchased the property, and received the rents for some years thereafter; he paid part of the purchase money, entered into an agreement with other members of the syndicate in connection with Dr. Woods

to take the north half of the ground; received the declaration of trust executed by Oliphant to him showing that he held a one tenth interest in the property in trust for him, which, when accepted by him obligated him to pay his proportion of the balance of the purchase money when it became due.

If he was agent for Mrs. Smith he should have promptly returned the declaration of trust upon its receipt, notified Oliphant that he was only agent for her, and that the declaration should be made in her favor, or disclaimed it altogether, if he did not intend to be personally bound thereby. But this he did not do nor did he disclose his agency to anyone except Will S. Woods, who was his own agent, until a short time before this suit was brought.

By retaining the declaration of trust, and acting throughout the entire transaction on his own account, without disclosing the name of his principal, he must be held to have impliedly accepted it in its entire scope and meaning.

In *Hamlin v. Abell*, 120 Mo. 188, it is said: "If an agent would bind only his principal it is his duty to disclose him. It is in his power always to do this, and when he fails to do so, it must be taken that he intends to bind himself." *McClellan v. Parker*, *supra*; Mechem on Agency, secs. 554, 929; *Cobb v. Knapp*, 71 N. Y. 348.

It is said on behalf of defendant that this is not the cause of action stated in the petition, but we are unable to see the force of this contention. The suit is to charge defendant as principal, not as agent, and if he was agent and contracted as such, it was matter of defense, and this was the theory adopted by defendant in his answer.

It is also contended by defendant that he disclosed his principal and did not pledge his own credit. That

he disclosed his agency to Will S. Woods seems to be borne out by the testimony, but as Will S. Woods was defendant's agent, and not the agent of Oliphant, it was no notice to him, nor is there any pretense that Woods ever informed Oliphant or Moore that defendant was the agent of Mrs. Smith, in and about the purchase of the property.

Moreover, after the property had been purchased, Oliphant executed in defendant's favor the declaration of trust showing his interest in the property, the balance of the purchase money to be paid, which if accepted, obligated him to pay one fifth of that sum. The declaration of trust was executed in May, 1888, was received by defendant through the mail from one to two years thereafter, and was retained by him from that time until the latter part of December, 1890, when he delivered it to a man who came from the Woods–Mellier Investment Company, and he never saw it after that time.

He never returned it to Oliphant, nor did he ever at any time until about the time this suit was brought disclaim having an interest in the property. It is true that he testified that he did not read it carefully, and that he deposited it with the papers of Smith where it remained until he delivered it to a man from the Woods-Mellier Investment Company, but it was then too late, if he, in fact, had theretofore accepted the declaration of trust, and thereby assumed the payment of one fifth interest of the purchase money.

For these reasons the judgment should be reversed and a new trial granted. It is so ordered. GANTT, P. J., and SHERWOOD, J., concur.