## FOREST HASKETT et al., Respondents, v. J. B. UNSELL, Appellant.

### St. Louis Court of Appeals, March 3, 1914.

1. **PRINCIPAL AND AGENT: Undisclosed Principal: Liability of Agent.** Where an agent conceals the fact of his agency and contracts as the ostensible principal, he becomes liable upon the contract to the same extent as though he were in fact the principal; and his disclosure of his agency after the obligation entailed by the contract has been nearly all performed by the other party would not be a timely disclosure, so as to relieve him from liability.

2. **TRIAL PRACTICE: Conflicting Evidence: Question for Jury.** The question is for the jury, where the evidence concerning it is conflicting.

3. **PRINCIPAL AND AGENT: Undisclosed Principal: Evidence.** In an action for services performed by plaintiff pursuant to a contract made with defendant, defended on the theory that defendant, in making the contract, was not acting for himself but as the agent of another, evidence that a representative of defendant advised plaintiff of the agency, prior to the making of the contract, was competent, especially as plaintiff had testified to his version of the conversation; and the exclusion of such evidence was reversible error.

4. ——: ——: ——: **Instructions.** In an action for services performed by plaintiff pursuant to a contract made with defendant, defended on the theory that defendant, in making the contract, was not acting for himself but as the agent of another, an instruction that the jury should find for plaintiff and against defendant, unless they believed that the principal authorized defendant to employ plaintiff to do the work on his account and that plaintiff accepted the employment and agreed to do the work on the account of the principal and to charge him instead of defendant, was erroneous, since, to make good the defense, it was only necessary that defendant prove that, acting in good faith, he disclosed to plaintiff the name of his principal and that he was acting for him in the premises.

Appeal from Pike Circuit Court.—*Hon. B. H. Dyer,* Judge.

REVERSED AND REMANDED.

*Pearson & Pearson* for appellant.

(1) The court erred in excluding legal and proper testimony offered by defendant. (2) The court should have given defendant's instruction directing a verdict for the defendant offered at the close of the plaintiff's testimony. Mook v. Tarr, 127 Mo. App. 311. (3) The court admitted error in giving defendant's instruction number two. 1 Am. and Eng. Ency. of Law, pp. 1119-1120; Ashley v. Jennings, 48 Mo. App. 146; Anderson & Co. v. Stapel, 80 Mo. App. 123.

*Robt. A. May* and *James E. Pew* for respondents.

It is well-settled law that an agency cannot be established by the mere acts or declarations of the imputed agent nor from the mere fact that he assumes to act as agent. Craighead v. Wells, 21 Mo. 404; Murphy v. Ins. Co., 83 Mo. App. 485; Anderson v. Volmer, 83 Mo. 406; Timber & Iron Co. v. Cooperage Co., 112 Mo. 383; The Salmon Falls Bank v. Leyser, 116 Mo. 51; Christian v. Smith, 85 Mo. App. 122; Waters-Pierce Oil Co. v. Jackson, 98 Mo. App. 324; Jolly v. Queen Ins. Co., 203 Mo. 295. And it seems clear to us that the same rule would apply in the instance of the case at bar, as between plaintiffs and defendant herein. From all the evidence, and particularly from the evidence of the defendant in this case, how can an agency have been established? While it is true that direct evidence of the agency may not be essential, but its existence may be inferred from facts and circumstances, yet such facts and circumstances certainly ought to be of that character which tend to show that

the principal must have had some knowledge of the fact that the imputed agent was so acting in the principal's behalf, and that he did not disaffirm the act timely.    Emery-Bird Thayer Co. v. Coomer, 87 Mo. App. 408.

ALLEN, J.—This is an action for services performed by the plaintiffs and for materials furnished, in plastering a laundry room in the city of Louisiana, Missouri.    The cause originated before a justice of the peace, and found its way by appeal to the circuit court, where plaintiffs had judgment, and the defendant appeals.

At the time when plaintiffs did the work in question, the defendant, Dr. Unsell, was conducting a laundry business in a building owned by one Pratt, as a tenant of the latter.    There is no dispute as to the character of the work done by plaintiffs, nor as to the amount of their bill; but the controversy pertains to defendant's personal liability therefor, and turns upon whether defendant, in contracting with plaintiffs, bound himself, or whether he acted as the authorized agent of a disclosed principal, viz., Pratt, and bound the latter only.

Plaintiff Haskett made the contract with defendant for doing the work in question, and he testified that defendant's foreman, one Milt. Holmes, "came by" the court house in Louisiana, where Haskett was working, and told him that defendant had some plastering to be done at the latter's laundry; that thereupon he (Haskett) went to see defendant, who showed him what work was to be done, and that he made defendant a price thereupon; that shortly thereafter the agreement between this plaintiff and the defendant was made for doing the work, at the price per yard mentioned in plaintiff's account.    He further testified that on a certain Friday, one week after making the contract, the work was begun; that nothing was said to

him to the effect that defendant was contracting in any manner otherwise than on his own behalf, until the next day, Saturday, at noon, when this plaintiff gave an order on defendant to pay the wages of an employee who was quitting plaintiff's services; that defendant refused to pay anything upon the order, and that when the witness saw defendant, some two hours later, the latter told him that he would have to look to Pratt for his money, that Pratt was paymaster. And Haskett, who had charge of the matter for himself and his co-partner, asserts that this was the first time that Pratt's name was mentioned to him in connection therewith.

On cross-examination of this witness, counsel for defendant asked him what defendant's foreman, Milt. Holmes, had said to him in the conversation to which the witness had previously referred, and the witness said that Holmes told him, "That Dr. Unsell was going to plaster up there," and that this was all that Holmes had said. The witness was further asked by defend-ant's counsel if Holmes did not, in that conversation, tell him that Mr. Pratt had said to get one John Ross, but that the latter could not do the work or had gone away. This question was objected to as being immaterial, and the objection was sustained, defendant excepting.

On behalf of plaintiffs it was further shown that by noon of the Saturday when the conversation is said to have taken place between Haskett and defendant, the plastering had been completed with the exception of the finishing, i. e., putting on "the white coat finish;" that the latter required more time, owing to the conditions under which it had to be done, and the work was not finished until the following Wednesday.

Plaintiffs completed the work, and it seems, at defendant's suggestion, mailed the bill therefor to Pratt in Colorado. It appears that defendant "O. K'd." the bill, stating that it was "a good job of work;" but that the bill was returned by Pratt to plaintiffs about a

week later. In this connection Haskett testified that before sending the bill to Pratt he said to defendant: "Suppose he refuses the bill?" And that defendant replied: "I am responsible."

Defendant testified that, when Haskett first came to see him about doing the plastering, he told this plaintiff that Pratt had written him to have the plastering done; that he wanted to know what it would cost because he did not want Pratt to be charged an extraordinary price therefor; that he disclosed his principal, Pratt, to plaintiff Haskett in the very beginning, as well as on the Saturday mentioned above when he told this plaintiff that Pratt was the paymaster; that Pratt had authorized him to have the work done and that in contracting with Haskett he was acting only as Pratt's agent. He denied that he had in any manner guaranteed the bill personally.

Defendant called his foreman, Milt. Holmes, as a witness in his behalf. This witness testified that he went to see plaintiff, Haskett, at the defendant's request. He was then asked by defendant's counsel to state to the jury what he said to Haskett, at or near the court house, i. e., to relate the entire conversation that took place between him and Haskett. This was objected to by plaintiff's counsel, as being "immaterial in this case;" and the objection was sustained, defendant excepting. The witness was then asked if he did not tell Haskett "that Pratt had notified Dr. Unsell to have John Ross or some one do some plastering on his building down there." This was likewise objected to by plaintiffs' counsel upon the ground that the question was "leading and suggestive," and "immaterial and incompetent" in this case. The objection was sustained, defendant excepting.

Depositions were read in evidence of both Pratt and his wife, whereby they testified to the effect that they had not authorized defendant to have the plastering done.

I. Appellant assigns as error the refusal of the court to give a peremptory instruction directing a verdict for the defendant; but it is quite apparent that the ruling of the court thus complained of was proper. Plaintiff's evidence went to show that the defendant had contracted with them to do the work, without disclosing his alleged principal, or indicating that he contracted otherwise than on his own behalf. It is true that plaintiffs' evidence indicates that the defendant disclosed his alleged principal, and the fact that he claimed to be acting merely as agent for such principal, after the contract had been entered into and when, according to plaintiffs, nearly all of the work had been done. But this would not be a timely disclosure. If defendant concealed the fact of his agency (if there was an agency), and contracted as the ostensible principal, as plaintiffs' evidence tends to show, then defendant became liable upon the contract to the same extent as though he were in fact the real principal. [See Lewis v. Fisher, 167 Mo. App. 674, 151 S. W. 172; Mechem on Agency, Sec. 554.] It was for the jury to resolve the conflict in the evidence as to what occurred in and about the making of the contract.

II. Error is assigned, however, to the rulings of the court in excluding the testimony of the witness Milt. Holmes relative to the conversation said to have been had between him and plaintiff Haskett. The latter testified to this conversation, purporting to give all that Holmes said to him. When Holmes was placed upon the stand, however, defendant's counsel was not permitted to have this witness state his version of this matter. This, we think, was clearly error. It may be true that the last question asked this witness, set out above, is open to the objection that it is "leading and suggestive." However, the prior question, which he was not permitted to answer, simply called for all of the conversation between him and Haskett. That the

defendant was entitled to have this stated by the witness, we think cannot be doubted. The defense proceeded upon the theory that Haskett was notified, prior to entering into the contract, that the work was to be done for Pratt, and that defendant was merely acting as Pratt's agent. If, in fact, defendant's foreman was sent to Haskett by defendant, and said anything to the latter regarding the alleged agency sufficient to put this plaintiff upon notice that Pratt was the real principal, and that defendant was proposing to contract only as agent for such principal, then Haskett was bound by such knowledge. And if the latter had such knowledge he must be presumed to have contracted with defendant's principal, if defendant was in fact authorized to act for such principal. The testimony thus sought to be elicited went to the very vitals of the case. The defense—and the only defense here available—is that defendant acted in good faith, as the authorized agent of Pratt, and that this was disclosed and known to Haskett. [See Mechem on Agency, Secs. 554, 555; Hotel Co. v. Furniture Co., 73 Mo. App. 135.]

Whether defendant's cross-examination of Haskett was unduly restricted, by the court's action above referred to, is a matter not calling for decision. But it seems quite clear that the exclusion of the testimony of the witness Holmes, relative to his conversation with Haskett, was error prejudicial to the rights of defendant, necessitating a reversal of the judgment.

III. At the request of plaintiff the court gave an instruction requiring the jury to find for plaintiffs, unless they believed from the evidence that Pratt authorized defendant to employ plaintiffs to do the work on Pratt's account, and that plaintiffs "accepted said employment, *and agreed to do said work on the account of said I. E. Pratt and to charge the said I. E. Pratt therewith instead of this defendant.*" (Italics ours.)

This instruction, we think, is erroneous. To make good his defense it was only necessary for defendant to show that he, in entire good faith, disclosed the name of his principal, and that he was acting for the latter in the premises. [See Hotel Co. v. Furniture Co., *supra.*] The instruction appears to be altogether misleading, in that it tells the jury that plaintiffs are entitled to recover unless the jury find that they specifically agreed to do the work on Pratt's account and to charge the latter therewith instead of defendant; whereas plaintiff's action should fail, though they made no such specific agreement, if they undertook the work at defendant's request merely and were fully advised that the latter was so acting as agent for a disclosed principal, and defendant was in fact clothed with such authority, unless the jury should find that defendant, in effect, agreed to pay the bill, if Pratt did not.

For the reasons given above the judgment must be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.