J. E. LANGE, Plaintiff-Respondent,

v.

Tom F. BAKER, Defendant-Appellant.

No. 8239.

Springfield Court of Appeals.

Missouri.

March 20, 1964.

**6**

Briney & Welborn, James E. Spain, Bloomfield, for defendant-appellant.

No appearance on appeal, for plaintiff-respondent.

STONE, Judge.

In this court-tried action at law, plaintiff J. E. Lange, an osteopathic physician, sought and obtained judgment in the principal sum of $1,710.50 against defendant Tom F. Baker for professional services alleged to have been rendered during *1956*, at defendant's special instance and request, to Mexican laborers (referred to as braceros) on Trailback Plantation near Essex in Stoddard County, Missouri. Defendant appeals.

At the trial, defendant described himself as "a farmer and a businessman and officer of several corporations." Under his guiding hand, Trailback Plantation engaged extensively in "farming and cotton ginning." In 1956 (as in previous years) Trailback contracted for braceros to work during the cotton picking season. See 7 U.S.C.A. §§ 1461–1468. The United States Department of Labor required that employers "furnish medical services to braceros" and carry insurance coverage for that purpose.

During the 1954 and 1955 cotton picking seasons, the medical services needed by the braceros then working for Trailback had been furnished by plaintiff and his charges had been paid by Trailback's then insurer. In August 1956 plaintiff called at the Trailback office and, as defendant stated, "wanted us to let him take care of our braceros again for that year." *Some* oral agreement that plaintiff should do so undoubtedly was reached at that time. Admittedly, he rendered such medical care as was required by the 152 braceros who worked for Trailback during the 1956 cotton picking season, a period of "a little over two months." But Trailback had changed insurers, and plaintiff's charges for professional services during the 1956 season were not paid by the then insurer. When

defendant also refused to pay those charges, this suit followed.

■ *Upon trial,* defendant raised issues (1) as to whether plaintiff's oral agreement was with defendant individually or with Trailback Plantation, *Inc.*, a Missouri corporation, (2) as to whether it had been agreed that plaintiff was to look only to Trailback's insurer for compensation, (3) as to the reasonable value of plaintiff's services, and (4) as to whether the failure of the insurer to pay plaintiff had been due to his tardy or inadequate completion and presentation of claim forms. *On this appeal,* only the *first* of the above-stated issues is preserved and presented, for the *sole* "point relied on" here is that the trial court erred in entering judgment against defendant Baker, an individual, because "the evidence shows *as a matter of law* that [defendant] was at all times acting on behalf of Trailback Plantation, *Inc.* * * * and the evidence * * * was insufficient to justify the lifting of the corporate veil so as to hold an individual [stockholder] liable." (All emphasis herein is ours.) Accordingly, our further factual review properly may be limited to such evidence as is relevant to determination of that point. There was sharply-conflicting evidence upon each of the other three issues; and, with no specific findings of fact requested or made, those issues (as well as the first) were ruled against defendant by the general finding and judgment. Rule 73.01(b); Section 510.310(2); Davis v. Broughton, Mo.App., 369 S.W.2d 857, 862(4); Rauth v. Dennison, Mo.App., 357 S.W.2d 201, 206(4). (All references to rules are to the Rules of Civil Procedure, V.A.M.R., and all statutory references are to RSMo 1959, V.A.M.S.)

Plaintiff and defendant were the only witnesses. *Defendant's* evidence was to the effect that Trailback Plantation, *Inc.*, contracted for the braceros, owned the land on which they worked, and "took out medical insurance" on them, and that, in making an oral agreement with plaintiff in August

1956, defendant was acting "as an officer of the corporation." Counsel for defendant also point out that the single word "Trailback" was written at the top of each page of plaintiff's Exhibit B, identified as "a record of the services" rendered by plaintiff to the braceros who worked on Trailback Plantation during 1956.

References in defendant's brief to this and other exhibits move us to comment parenthetically that none of the twenty-two exhibits were included in the transcript or separately filed in this court. Rule 82.15. Although an appellate court has the *discretionary* right to direct the clerk of the trial court to send up original documents or exhibits [Rule 83.03; Donati v. Gualdoni, 358 Mo. 667, 671, 216 S.W.2d 519, 520(2); Lieffring v. Birt, 356 Mo. 1092, 1093, 204 S.W.2d 935, 936(1)], *the court is under no obligation to do so*. Brand v. Brand, Mo., 245 S.W.2d 94, 96(7); Hendershot v. Minich, Mo., 297 S.W.2d 403, 409 (11). Unless the questions on appeal are presented by a statement of the case approved by the trial court [Rule 82.13] or the parties agree in writing upon an abbreviated or partial transcript [Rule 82.12 (b); Sec. 512.110(2)], "[i]t is appellant's responsibility to file a full transcript as required by the statute [Sec. 512.110] and the rules [Rules 82.12 and 82.14]. Failure to do so may result in dismissal of the appeal." Whealen v. St. Louis Soft Ball Ass'n., 356 Mo. 622, 625, 202 S.W.2d 891, 893. See Brand, supra, 245 S.W.2d loc. cit. 96(4); Bales v. Jefferson City Lines, Inc., 239 Mo.App. 264, 267, 192 S.W.2d 27, 28(2); State ex rel. Baumann v. Quinn, Mo., 337 S.W.2d 84, 86(1). And where, as here, exhibits are omitted from the transcript and are not filed with the appellate court [Rule 82.15], the intendment and content of such exhibits will be taken as favorable to the trial court's ruling and as unfavorable to appellant.[1]

However, we need not and do not rest resolution of this appeal upon any presumption as to the intendment and content of the missing exhibits. *Plaintiff's* evidence was to the effect that his agreement was with defendant Baker individually: "Q. * * * In 1956 and prior to September, did you enter into an agreement with Tom F. Baker, the defendant in this case? * * * A. To take care of his braceros? Q. Yes. A. Yes, I did." The agreement was that: Mr. Baker was to send his braceros down to our office, and * * * we were to give them adequate service. The understanding was that Mr. Baker had insurance and in case the insurance failed he would pay the bill." When pressed on cross-examination for an affirmative answer to the question, "you did this work for the Trailback Plantation [Inc.] and not for Tom Baker as an individual, is that right," plaintiff responded "I did it for Tom Baker"; and, to the inquiry whether "Mr. Baker told you he would pay this amount if the insurance company did not," plaintiff replied "that is right, sir."

With reference to the single word "Trailback" at the top of each page of plaintiff's Exhibit B, plaintiff said that it was "just a form of identification * * * that those braceros came from the Trailback Plantation." But, although plaintiff realized that the braceros worked on Trailback Plantation, he insisted that he had no knowledge prior to trial on December 11, 1962, that this enterprise had been incorporated. Witness his testimony: "Q. In all of your dealings with Mr. Baker [defendant], did you ever hear of a Trailback Plantation, Incorporated? A. The only time I knew

1. Fuzzell v. Williams, Mo.App., 288 S.W.2d 372, 373(2); Cooper v. Massachusetts Bonding & Ins. Co., 239 Mo.App. 67, 71, 186 S.W.2d 549, 551–552(6); Smith v. Wilson, Mo.App., 296 S.W. 1036, 1039–1040(3). See James v. James, Mo., 248 S.W.2d 623, 627(6); Powell v. Pinkley, Mo., 180 S.W.2d 745, 748(5); State ex rel. and to use of City of Maplewood v. Southern Surety Co., 323 Mo. 150, 157, 19 S.W.2d 691, 693(1); Estes v. Nell, 140 Mo. 639, 652, 41 S.W. 940, 942(3); Weintraub v. Abraham Lincoln Life Ins. Co., Mo.App., 99 S.W.2d 160, 164(9).

Trailback Plantation was incorporated was this afternoon. Q. Did Mr. Baker ever tell you or did anyone ever tell you that Mr. Baker was president of such a corporation? A. No, sir."

*Defendant's* testimony tended to support and confirm, rather than to weaken or deny, the last-quoted testimony. He "assumed" that he had *not* told plaintiff that he (defendant) was president of Trailback Plantation, Inc. He conceded that there was nothing in his office to indicate that Trailback Plantation had been incorporated. And, although (so he said) he then had letterheads of "Trailback Plantation, *Inc.*," he "didn't think" that he ever had written plaintiff on one of those letterheads. Even though (as we have noted) the exhibits have not been made available to us, it is apparent from the identifying testimony that at least nine of the exhibits were originals or carbon copies of letters written by defendant with respect to the matter in litigation, and it is plain from the transcript not only that there had been no reference to Trailback Plantation, *Inc.*, in any of those letters but also that none of them had borne even the *typewritten* signature of Trailback Plantation, *Inc., or* of Trailback Plantation, *or* of defendant Baker *as a corporate officer.* Rather, the practice seems to have been for defendant to have signed (or for his name to have been signed by an authorized employee) immediately above the typewritten name, "Tom F. Baker." When asked bluntly whether he expected plaintiff "to think that he was dealing with a corporation when he was talking to you," defendant hedged and equivocated: "Well, I assumed that everybody that has been a corporation for seventeen years—I assumed that everybody in the neighborhood knew that." Incidentally, the record affirmatively shows that plaintiff had been practicing "in the neighborhood" only a little longer then three years. In this connection, we observe also that the incorporation of Trailback Plantation was not mentioned in defendant's answer; and, when plaintiff (so he testified) first heard

of the corporation on the date of trial, i. e., on December 11, 1962, the five-year statute of limitations [Sec. 516.120] already had run with respect to any claim against Trailback Plantation, *Inc.*, for medical services rendered in the Fall of 1956.

"The corporate papers" were among the exhibits not made available to us; but, for the purposes of this opinion, we may assume that Trailback Plantation, Inc., was a Missouri corporation in good standing at all times herein material, and we may accept defendant's testimony concerning the corporation, its directors and shareholders, and the number of shares owned by each. At all times from and after 1951 when defendant acquired the stock of the only other major shareholder, he (defendant) was president of the corporation and owned 1290 of the 1300 issued and outstanding shares of capital stock. In 1956, his wife owned five shares, his father owned three shares, and his mother (who had died prior to the time of trial) owned two shares. After 1951, defendant's wife had been secretary-treasurer of the corporation and his father had been vice-president. No one other than defendant and the named relatives had been a member of the board of directors. Defendant and his wife were the only officers or directors to whom salaries had been paid, and the corporation had never declared or paid a dividend on its stock.

This and other evidence concerning the corporation was offered, apparently on the theory that it was relevant and material under the legal doctrine (which, so counsel thought, might be applicable) that the fiction of the corporate entity may be disregarded when that becomes appropriate and necessary in order to defeat fraud, illegality or injustice. Plaintiff's counsel alluded to that doctrine in the course of trial, and defendant's counsel here allude to it in their *sole* point, i. e., that the trial court erred because "the evidence shows as a matter of law that [defendant] was at all

times acting on behalf of Trailback Plantation, Inc. * * * and *the evidence * * was insufficient to justify the lifting of the corporate veil* so as to hold an individual liable." However, it is clear that correct disposition of this case does not require any determination as to applicability of that doctrine. Cf. Carter v. Matthey Laundry & Dry Cleaning Co., Mo., 330 S.W.2d 771, 777.[2] This is so for two reasons.

■ In the first place, having in mind that it was for the trier of the facts to resolve any conflicts in the evidence "as to what occurred in and about the making of the contract" [Haskett v. Unsell, 181 Mo. App. 480, 485, 164 S.W. 651, 652], and showing proper respect for the plain admonition in Rule 73.01(d) [Sec. 510.310 (4)] that we should accord due deference to the superior opportunity of the trial court to judge of "the credibility and characteristics of the witnesses who testified before him" [Peine v. Sater, Mo., 289 S.W. 2d 101, 102(1); Cull v. Pfeifer, Mo., 307 S.W.2d 424, 428(5); Spaeth v. Larkin, Mo., 325 S.W.2d 767, 771(3)], certainly we may not say *as a matter of law,* in the very teeth of plaintiff's testimony hereinbefore detailed, that defendant "was at all times acting on behalf of Trailback Plantation, *Inc.*" Rather, we think that the evidence and the inferences fairly and reasonably deducible therefrom afford adequate support for the trial court's finding, inherent

in the general finding for plaintiff [Rule 73.01(b); Sec. 510.310(2)], that the oral agreement was with defendant individually. Rothweiler v. Callicott, Mo.App., 322 S.W. 2d 151; Rankin v. Vest, Mo.App., 13 S.W. 2d 1095. Unless the oral agreement was with the corporation, i. e., Trailback Plantation, Inc., obviously there could be no occasion to consider whether the fiction of the corporate entity should be disregarded.

■ In the second place, the record persuasively demonstrates and satisfactorily establishes that, regardless of any undisclosed intention on the part of defendant to act for the corporation in making the oral agreement, plaintiff had no actual or constructive knowledge of defendant's alleged status as an agent for Trailback Plantation, *Inc.* Rothweiler v. Callicott, supra; Rankin v. Vest, supra. In other words, if defendant was acting for the corporation, plaintiff was unaware of such agency. A. A. Electric Machinery Co. v. Block, Mo. App., 193 S.W.2d 631, 636. Thus, the instant case falls within the firmly-established doctrine that one who acts as agent for another in making a contract is liable individually if, at the time of making such contract, he fails to disclose his agency and the identity of his principal.[3] If defendant had desired to avoid personal contractual liability on the ground that he acted only as agent for the corporation, it would have been his duty to have disclosed the identity

2. For factual situations invoking application of this doctrine, see Durwood v. Dubinsky, Mo., 361 S.W.2d 779, 788(5); Schwartz Plumbing Co. v. Shelby Const. Co., Mo., 338 S.W.2d 781, 794(14); Ruckels v. Pryor, 351 Mo. 819, 174 S.W. 2d 185, 199(8); Osler v. Joplin Life Ins. Co., Mo., 164 S.W.2d 295, 298(4); Fidelity & Casualty Co. of New York v. Glass, Mo.App., 327 S.W.2d 538, 541 (4); Public Service Com'n. v. Cirese, Mo.App., 240 S.W.2d 186; Panich v. Curtis, Owen, Fuller Corp., Mo.App., 124 S.W.2d 619(7); Kansas City Wholesale Grocery Co. v. H. T. Poindexter & Sons Merchandise Co., 232 Mo.App. 378, 107 S.W.2d 841.

3. Hartwig-Dischinger Realty Co. v. Unemployment Comp. Com'n., 350 Mo. 690, 168 S.W.2d 78, 81(7–9); Rankin v. Vest, Mo.App., 13 S.W.2d 1095; A. A. Electric Machinery Co. v. Block, Mo.App., 193 S.W.2d 631, 636(9, 10); Negbaur v. Fogel Const. Co., Mo.App., 58 S.W.2d 346, 351(4); 3 Am.Jur.2d, Agency, § 317, p. 674; 3 C.J.S., Agency, § 216a, p. 123; Restatement, Second, Agency § 322, p. 72. See also Porter v. Merrill, 138 Mo. 555, 39 S.W. 798(1); Bond Diamond Co. v. Wilson, Mo.App., 325 S.W.2d 63, 65(1); Cruse v. Eslinger, Mo.App., 235 S.W. 496, 498(3); Heller v. Ferguson, 189 Mo. App. 484, 176 S.W. 1126, 1128(6).

of his principal *at the time of the making of the oral agreement*,[4] and plaintiff would not have been charged with the burden of seeking to discover such principal.[5]

■ We are enjoined from setting aside the judgment nisi unless it is clearly erroneous. Rule 73.01(d); Sec. 510.310(4);

Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 783(1); Copher v. Barbee, Mo.App., 361 S.W.2d 137, 149(20). Surely we may not so conclude on the record here presented. Accordingly, the judgment for plaintiff is affirmed.

RUARK, P. J., and HOGAN, J., concur.

---

4. Porter v. Merrill, 138 Mo. 555, 558, 39 S.W. 798; A. A. Electric Machinery Co., supra, 193 S.W.2d loc. cit. 636(11); Rankin, supra, 13 S.W.2d loc. cit. 1097; Banjo v. Wacker, Mo.App., 251 S.W. 456, 457–458(2); Haskett v. Unsell, 181 Mo. App. 480, 485, 164 S.W. 651, 652(1); 3 Am.Jur.2d, Agency, § 320, loc. cit. 677; 3 C.J.S. Agency § 216b, p. 125.

5. Rankin, supra, 13 S.W.2d loc. cit. 1096 (1, 3); Banjo, supra, 251 S.W. loc. cit. 458; Negbaur, supra, 58 S.W.2d loc. cit. 351; A. A. Electric Machinery Co., supra, 193 S.W.2d loc. cit. 636(9); Hamlin v. Abell, 120 Mo. 188, 198, 25 S.W. 516, 518; 3 Am.Jur.2d, Agency, § 320, loc. cit. 677; 3 C.J.S. Agency § 216a, p. 123.