**C. C. DILLON CO., a Missouri Corporation, Respondent,**

v.

**Charles G. ROBINSON and Sylvia S. Robinson, Appellants.**

**No. 43947.**

Missouri Court of Appeals, Eastern District, Division Four.

June 15, 1982.

Kent E. Karohl, Kirkwood, for appellants.

W. Layton Stewart, St. Louis, for respondent.

SMITH, Presiding Judge.

Defendant, Charles Robinson, appeals from a judgment against him of $30,318.37 in a court tried case. Plaintiff is a company engaged in the business of selling and distributing gasoline, oil, petroleum products, and service station merchandise. It filed a seven count petition against Charles Robinson and Sylvia Robinson, his wife. Counts I, III, V, VI and VII alleged that plaintiff "at the special instance and request of defendant, sold and delivered certain gasoline, oil, petroleum products and service station merchandise on open account" and that defendant "promised and agreed to pay same" and that a balance was due and owing on each account. The accounts were attached to the petition and incorporated therein by reference. These accounts reflect charges against five different service station locations, each station representing a different count of the petition. Counts II and IV sought recovery against defendants for written guarantees of payment of the accounts alleged in Counts I and III respectively. Following a stipulation as to the amounts owed under Counts II, IV, V and VII plaintiff dismissed Counts I and III. Judgment was rendered against both defendants on Counts II and IV and against Charles Robinson on Counts V, VI, and VII. Appeal was taken only from the judgment on Count VI.

It is defendant's contention that the judgment on Count VI is erroneous because the evidence establishes that the products making up that account were sold to Chasyl Oil Company, Ltd., a corporation, and not to Charles Robinson, individually. This requires some examination of the facts. Robinson operated, as sole proprietorships, Robinson Construction and C. C. Robinson Enterprises. He also operated the four service stations to which plaintiff supplied products which form the basis for Counts II, IV, V and VII. In the summer of 1973, Robinson became interested in opening another service station—the Church Road station. Plaintiff was interested in supplying this station but was unable to obtain gasoline from its supplier, Phillips Petroleum, unless it could assure Phillips that the station constituted a "new customer" under the federal energy regulations which imposed restrictions on the allocation of petroleum. Robinson was advised of this problem by plaintiff. In July 1973, plaintiff, through its president, sent a handwritten letter to "Chasyl Oil Company" offering to assist that company in setting up the Church Road station and to supply gasoline after it opened. The evidence was in dispute as to

who suggested the idea of forming a corporation—each party pointed to the other. In April 1974, Chasyl Oil Co., Ltd. was incorporated and was, at the time of trial, still in good standing.

The account upon which suit was brought carried the name "Robinson Construction" as the name of the customer on the front and back of the first ledger card. On the second card that name and the address were stricken out and the name "Chasyl Oil Co." and a different address[1] were handwritten in ink. Thereafter the remaining five cards of the account carry the typewritten name "Chasyl Oil Company" as the named customer. The parties stipulated that "the account stated ... is addressed to Chasyl Oil Company." It is notable that the other four service station accounts upon which plaintiff's other counts were based listed the name of the service station as the customer on the first card and thereafter "Robinson Construction." The plaintiff's president testified that normally the customer's name is placed at the top of the ledger card.

The parties also stipulated to the facts set forth in this paragraph. Plaintiff during the times covered by the statement of account applied to the Federal Energy Office for allocations of oil products in the name of Chasyl Oil Company, Limited, as the name of the customer. Throughout the period Chasyl Oil Company did not have its own checking account, and payments on the account when made were made by Charles Robinson individually, or Robinson Construction or C. C. Robinson Enterprises. Chasyl Oil did not file separately in its corporate name any state or federal income tax returns.

The face of the account reflects that Chasyl Oil Company, not Robinson, was the named customer, throughout most of the period of the account. Plaintiff urges three grounds for upholding the trial court's finding that Robinson was liable for the account: (1) the doctrine of undisclosed principal; (2) that the sales were actually to Robinson as an individual, not to the company; and (3) that the corporate entity should be disregarded as it was simply the "alter ego" for Robinson. We deal with those in turn.

■ The doctrine of undisclosed principal is clearly not applicable. The evidence makes clear beyond question that more than a year before the first item on the account was delivered, plaintiff was aware of Robinson's intention to utilize Chasyl Oil as the operator of the service station. Long before the corporation was even organized, plaintiff wrote to "Chasyl Oil Company" offering plaintiff's assistance and soliciting Chasyl's business. Throughout the time of the account, plaintiff sought allocations for petroleum for Chasyl Oil Company from the federal government. To say that Robinson failed to disclose his principal, Chasyl Oil Company, is simply not consistent with the evidence.

■ Plaintiff's second contention is also without factual support except to the extent it is simply another way to express the third contention. The requested allocations, the account itself, and the plaintiff's letter to Chasyl all reflect that the sales were made to Chasyl, not Robinson. The plaintiff's president's testimony that it was his understanding that he was selling to "Chuck Robinson" and that he was extending credit to Robinson does not establish that that was the legal relationship created. "[W]hether a contract is made and, if so, what the contract is depend upon what is actually said and done and not upon the understanding or supposition of one of the parties." *Shofler v. Jordan,* 284 S.W.2d 612 (Mo.App.1955) [5]. Plaintiff obtained no written guaranty of payment from Robinson as it had done with other stations and there was no testimony of any oral guaranty.[2] There is simply no evidence that the

---

1. The new address was the defendant's home address.

2. It is doubtful that an oral guaranty would be binding in view of the statute of frauds. Sec. 432.010 RSMo 1978.

sale was to Robinson personally.[3] His payments on the account do not establish his liability therefor; they may have constituted simply an accommodation or business convenience.

■ We turn to plaintiff's third contention. The doctrine of "alter ego" or "instrumentality" used as a device to "pierce the corporate veil" is an equitable doctrine.

"The test whether a parent corporation exerts an undue domination over its subsidiary to justify disregarding separate corporate entities is 'whether or not the arrangement involved is being used for a proper purpose ... Making a corporation a supplemental part of an economic unit and operating it without sufficient funds to meet obligations to those who must deal with it would be circumstantial evidence tending to show either an improper purpose or reckless disregard of the rights of others .... If any intercorporate affiliation is devised for or is being used to accomplish an improper or unlawful purpose, certainly equity does have the authority to tear down technical legal barriers and reach beyond them to impose liability or grant proper relief. If the purpose is lawful, and fair and equitable to those with whom it is intended to deal, legal forms and relationships should be observed. Men have the right to use legal forms which they believe to be helpful in accomplishing proper purposes. The question should not be merely "instrumentality," but "instrumentality for what purpose".'" *Phelps v. Missouri-Kansas-Texas Railroad Company*, 438 S.W.2d 181 (Mo.1968) [4] *cert. granted*, 393 U.S. 1061 [89 S.Ct. 720, 21 L.Ed.2d 705] *cert. dismissed*, 394 U.S. 955 [89 S.Ct. 1298, 22 L.Ed.2d 494] quoting from *May Department Stores Co. v. Union Electric Light & Power Co.*, 341 Mo. 299, 107 S.W.2d 41 (1937) [11].

We think this same test is applicable to the relationship between an individual and his controlled corporation. It may be conceded that Chasyl was controlled, and 100% owned by Robinson and his wife but, such ownership and control does not of itself authorize piercing the corporate veil. It may also be conceded that Chasyl was minimally financed. Whatever the impact of that fact on other parties, we are unable to see how it establishes an improper purpose as to this plaintiff. Plaintiff was aware of the circumstances under which Chasyl was formed, and was, in fact, in large part responsible for its formation. It made no inquiries as to the financial solvency of the company; expressly believed it was extending credit to Robinson, not Chasyl; and yet sought no guaranty from Robinson of that credit obligation as it had done with other stations. If any improper purpose existed in the formation and utilization of Chasyl to operate the Church Road station, that purpose was to avoid the allocation limitations of the federal government imposed upon plaintiff.[4] That purpose, if it existed, was equally the product of plaintiff, of which it is in no position to complain. Under the

3. Plaintiff had evidence of a separate replevin action and judgment against Robinson in Jefferson County to recover certain property of plaintiff located at the Church Road station. Such an action is one for possession only and does not establish ownership of the Church Road station.

4. The parties have joined issue on the availability of an "illegality" defense to defendant, because no such defense was pleaded affirmatively in defendant's answer. *See* Rule 55.08. There was no basis for defendant to raise such a defense in its answer. Plaintiff's petition was plead strictly as an "open account" against Robinson; it did not mention Chasyl Oil or plaintiff's relationship with Chasyl Oil; it did not allege "alter ego" or "instrumentality." On its face the petition simply charged that defendant was a customer who owed plaintiff money on an open account. It was not until trial that the relationship between Chasyl, plaintiff and defendant entered the case and defendant raised the illegality question at that time. We do not, however, need to determine the legality of the parties conduct. If they acted illegally, of course, we could not enforce such illegal conduct as a matter of public policy. *Temperato v. Horstman*, 321 S.W.2d 657 (Mo.1959) [11–13]; *King v. Moorehead*, 495 S.W.2d 65 (Mo.App.1973) [17–20]. If they acted legally, as we presume they did, their conduct reflects the intention to establish a customer-supplier relationship between Chasyl Oil, a corporation and plaintiff.

facts of this case, there is no ground for ignoring the corporate status of Chasyl established for reasons of mutual self-interest of both plaintiff and defendant. Under the scope of our review set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo banc 1976) [1–3], we find no substantial evidence to support the judgment and conclude it was based upon an erroneous application of the law.

Judgment on Count VI reversed.

SATZ and PUDLOWSKI, JJ., concur.