Lloyd J. **FAIRBANKS** and Betty Fairbanks, Plaintiffs/Respondents,

v.

Edwin W. **CHAMBERS** and Janice R. Chambers, Defendants/Appellants.

No. WD 33673.

Missouri Court of Appeals,
Western District.

Jan. 10, 1984.

Richard E. Lee, Edward M. Manring (argued), Albany, for defendants/appellants.

Jim Turner, St. Joseph, for plaintiffs/respondents.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

The defendants appeal from a judgment entered on a verdict in plaintiffs' favor in this action to recover damages for breach of an implied warranty of fitness for consumption of hog feed supplement. Defendants primarily argue that the evidence was not sufficient to justify piercing the corporate veil so as to hold them individually liable for plaintiffs' loss. We agree with the defendants that the trial court erred in concluding that the evidence was sufficient for that purpose. Accordingly, we reverse and remand for new trial.

Defendants' appeal is not concerned with damages or causation, therefore, we need not review the evidence on those issues. Briefly, the evidence shows that the plaintiffs purchased a hog feed supplement from defendant Chambers Feed and Farm Supply, Inc., and fed the supplement to their hogs. By the next day, 219 hogs had died.

Plaintiffs brought suit against defendants and their corporation, Chambers Feed and Farm Supply Company. The plaintiffs alleged that the defendants were engaged in the feed and supply business and that defendants, through a long course of dealing in, mixing and supplying hog feed supplement to plaintiffs, had impliedly warranted the fitness of the material as hog feed. The petition further charged that on September 13, 1977, the defendants had sold and delivered to plaintiffs a quantity of feed supplement under the implied warranty, but that the supplement was not in

fact fit to feed hogs and was toxic and killed plaintiffs' hogs, damaging plaintiffs.

As trial began, the plaintiffs sought damages from both the corporation and the corporation's only officers and shareholders, Edwin and Janice Chambers. The action against the corporate defendant, however, was voluntarily dismissed at the close of all the evidence. The record indicates that the plaintiffs dismissed the corporation because they did not know which of the corporation's assets were unencumbered and could have been used to satisfy a judgment.

Evidence as to the relationship between Mr. and Mrs. Chambers and Chambers Feed and Farm Supply, Inc., indicated that the couple had operated the business for a number of years before incorporating in 1973. Since that date, Edwin Chambers has held the positions of president and vice president, and Janice Chambers has served as secretary and treasurer. The two own all the stock in the corporation. Mr. Chambers acknowledged that their purpose in incorporating was to enable them to borrow money to purchase their present facilities. (He testified that at that time a corporation could be charged any rate of interest it was willing to pay. For that reason, lenders were willing to lend to a corporation but not to individuals because of Missouri's usury law.) Title to all real property, inventory, vehicles and office equipment is held in the corporate name.

At the time of trial, all billing forms, signs and phone listings showed the firm name as Chambers Feed and Supply. Plaintiffs testified that they were unaware that the firm, with which they had done business for seven years, was incorporated. Mr. Chambers testified that he "would not take issue with" Mr. Fairbank's assertion. Mr. Chambers had never indicated to him at any time prior to the sale that the Chambers "were a corporation." At trial, plaintiffs' attorney argued without objection that the Fairbanks did not know of the existence of the corporation until the matter came to a lawsuit. Defendants' counsel made no attempt to adduce evidence of or

to argue the plaintiffs' prior knowledge of the corporation's existence or its operation of the defendants' business. Defendants' main line of defense was that the individual defendants did not sell to the plaintiffs, the corporation did.

Plaintiffs' Exhibit 1, an unidentified document (apparently related to the defendants' application for insurance coverage), showed the firm name as Edwin W. Chambers and Janice R. Chambers d/b/a Chambers Feed and Farm Supply. A small box was checked under the name indicating "partnership." Mr. Chambers explained the document as one filled out by a third party.

Following dismissal of the action against the corporation, the jury returned a verdict in favor of the plaintiffs, assessing damages at $18,500.

On appeal, defendants raise three issues: (1) that the trial court erred in overruling their motion for directed verdict because the evidence directed toward piercing the corporate veil and holding the defendants individually liable was insufficient to warrant submitting the question to the jury; (2) that plain error occurred in the admission of a statute into evidence; and (3) that the plaintiffs' petition failed to state a cause of action.

At trial, the plaintiffs asserted that the corporation was the "alter ego" of Edwin and Janice Chambers and, therefore, the individuals were liable because they made no effort to inform either the public in general or the plaintiffs in particular that their feed and supply company was a corporation. On appeal, the plaintiffs attempt to refine this argument by contending that the defendants' failure to disclose that they were agents of the corporation constitutes a basis for piercing the corporate veil.

■ The plaintiffs misunderstand the elements of the equitable doctrine of piercing the corporate veil. The mere failure to inform the public of a corporate existence has never been held in Missouri to justify piercing the corporate veil. Although

plaintiffs are correct that § 351.110(1) [1] does require a corporate name to contain the word "corporation," "company," "incorporated," or "limited" or an abbreviation of one of those words, decisions interpreting that section relate only to the secretary of state's discretion in establishing corporate names and the ability of similarly named corporations to challenge the name as confusing. The section has never been interpreted to require that the corporate name must appear on all signage, letterheads, company forms, phone listings, and the like. Moreover, assuming arguendo that the section has that meaning, its violation could not be said to automatically give rise to anything more than those sanctions which the state may choose to impose. Certainly the loss of all the protections and advantages of the corporate form (among them the fundamental protection of limited liability) cannot be said to spring spontaneously from the failure to comply.

▮ Loss of corporate protections is based not on technical statutory noncompliance but on a two-prong test of "alter ego" and an improper purpose. The corporate entity may be disregarded only in special circumstances. Not only must the corporation be controlled and influenced by one or a few persons, in addition, the evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify wrong or to perpetuate fraud. *Sampson Distributing Co. v. Cherry,* 346 Mo. 885, 143 S.W.2d 307, 309 (1940). A mere showing that one individual has absolute control of a corporation does not without more justify disregarding legal forms. *See Smith v. City of Lee's Summit,* 450 S.W.2d 485, 489 (Mo.App.1970).

▮ The plaintiffs here do not suggest that the corporate entity was used as a subterfuge. The only evidence presented as to the purpose of Mr. and Mrs. Chambers in failing to add "Inc." to their signage and forms, was presented by Mr. Chambers who testified that because he was "too frugal" he chose to use his old pre-incorporation office supplies still on

hand. Although the jury was free to disbelieve that explanation, plaintiffs offered no evidence whatsoever of any other or improper purpose. The burden is on the party arguing that the corporate form should be disregarded to present such evidence. *See Lynn v. Lloyd A. Lynn, Inc.,* 493 S.W.2d 363 (Mo.App.1973).

The merest hint of a deliberate misleading may be detected in the checking of the "partnership" box on defendants' insurance application. Even if we assume, however, that that action was taken to deceive the insurer as to the corporate status (an assumption wholly unjustified by the evidence even if defendant's explanation that the form was filled out by a third party is ignored), the fundamental question remains—to what purpose? Plaintiffs suggest no improper purpose or advantage of any kind accruing to the defendants in misrepresenting their status on the application and in the absence of such evidence, we will not read impropriety into this check mark.

The insufficiency of that merest hint is made most clear when contrasted with the evidence in *Mansfield v. Smithie,* 615 S.W.2d 649 (Mo.App.1981), a case in which disregarding the corporate entity was held to be justified because of the principal shareholders' "total disregard" for that entity themselves. In *Mansfield,* a civil case for assault against nightclub owners for the brass knuckle beating of a customer by an employee, the individual defendants had operated the nightclub as a partnership prior to its incorporation as a not-for-profit corporation. The change in status was said to have been made to enable the defendants to sell liquor by the drink. Once that goal was accomplished, the defendants continued to operate the club as a partnership, regarding themselves as sole owners, sharing the profits as before (taking home the proceeds "if there was any left"), owning the facilities as individuals (leasing to the corporation only after the lawsuit was filed), and apparently failing to file corpo-

**1.** All sectional references are to Revised Statutes of Missouri, 1978.

rate tax returns. This evidence indicated an improper profit-directed purpose entirely unrelated to any of the charitable or related purposes for which Missouri not-for-profit corporations may be organized under § 355.025 and provided an "ample basis" for concluding that the defendants operated the club as individuals in disregard of the corporate form.[2]

■ Here, the defendants' view of themselves as "co-owners" and as the persons entitled to profits is not patently inconsistent with the corporate form as it was in *Mansfield*. (Chambers Feed and Farm Supply, Inc., is not organized as a not-for-profit corporation.) None of the other factors in *Mansfield* has been shown to exist. The change in the corporate status was said by defendants to have been made for a legitimate business reason, and plaintiffs offered no evidence to the contrary. The facilities and all inventory and supplies were owned by the corporation, and plaintiffs did not suggest that corporate formalities (including tax returns) were not observed. Although the corporation is closely held, § 351.050 expressly disavows any legislative intention that "the existence of a corporation ... is in any respect impaired by the ... ownership of all of the shares ... by one owner or by two owners or that by such ownership the corporation ... ceases to possess any of the capacities, powers or authority which it otherwise would possess." Here, we have only the evidence of a failure to inform the public of corporate status. An improper purpose cannot be inferred from that failure alone.

Finally, plaintiffs call our attention to *C.C. Dillon Co. v. Robinson*, 636 S.W.2d 380 (Mo.App.1982), in which the evidence was found insufficient to ignore the corporate entity and hold the individual defendant personally liable. Plaintiffs here argue that the *Dillon* holding was premised on evidence that the plaintiff knew of defendant's corporation at the time of contracting,

a fact which distinguishes *Dillon* from this case and which implies that absent such knowledge liability will lie.

In *Dillon*, the plaintiffs urged three separate grounds for affirming the trial court's finding: (1) the doctrine of an undisclosed principal; (2) that the sales were made to the individual and not to the corporation; and (3) that the corporate veil should be pierced. *Id.* at 382. On appeal, the Eastern District recognized that the doctrine of an undisclosed principal was inapplicable simply because the evidence demonstrated that the plaintiff knew of the agency. That determination did not bear upon the plaintiff's contention that the corporate veil should be pierced because the doctrine of undisclosed principal and the doctrine of piercing the corporate veil are separate and distinct vehicles for imposing personal liability.

Here, plaintiffs erroneously argue that the doctrine of undisclosed principal may allow a piercing of the corporate veil. Nothing in *Dillon* suggests that ignorance of the corporate entity alone warrants disregarding the corporate form. In fact, the court at 383, quoting from *Phelps v. Missouri-Kansas-Texas Railroad Company*, 438 S.W.2d 181 (Mo.1968), cited the test used to determine whether one corporation is a mere instrumentality of a parent corporation, and applied that test to the relationship between an individual and his controlled corporation:

> The test ... is 'whether or not the arrangement involved is being used for a proper purpose.' ... If any intercorporate affiliation is devised for or is being used to accomplish an improper or unlawful purpose, certainly equity does have the authority to tear down technical legal barriers and reach beyond them to impose liability or grant proper relief. If the purpose is lawful, and fair and equitable to those with whom it is intended to

---

**2.** In spite of this "ample basis," the *Mansfield* decision has been labelled "questionable" when contrasted with cases holding that absent fraud, injustice or illegality, piercing of the corporate veil will not be permitted. Carpenter and Sing-er, *Recent Developments in Missouri—Corporate Law*, 50 UMKC L.Rev. 412, 416 (1982). As we observe herein, the facts in the case before us do not rise to this "questionable" level.

deal, legal forms and relationships should be observed. Men have the right to use legal forms which they believe to be helpful in accomplishing proper purposes.

■ Viewing the evidence against this long-recognized "improper purpose" test, we hold that the evidence was insufficient to permit plaintiffs to pierce the corporate veil enshrouding Mr. and Mrs. Chambers. The trial court erred in concluding as a matter of law that the evidence was sufficient to invoke the corporate veil theory. But that error does not settle the issue of defendants' individual liability in their favor. The evidence of non-disclosure would have justified the trial court's permitting plaintiffs to proceed against the individual defendants on the ground that the corporation was their undisclosed principal.

■ Before proceeding to a discussion of the applicability in the undisclosed principal theory as opposed to the theory of piercing the corporate veil, we note that the former is a rule of law and applies regardless of the defendants' intent to engage in wrongful conduct. The crux of the doctrine of undisclosed principal is a failure to disclose, no more. Conversely, the doctrine permitting piercing of the corporate veil is based in equity and as such reaches the wrongful actions of defendants for which no adequate remedy at law exists. Under the latter theory, the dispositive inquiry is the defendants' intent or purpose. *See May Department Stores Co. v. Union Electric Light & Power Co.*, 341 Mo. 299, 107 S.W.2d 41, 55 (1937); *Dillon, supra,* at 383.

As previously mentioned, the plaintiffs' confusion regarding the doctrine of piercing the corporate veil led them to propose a "failure to publicize the corporate existence" test as a basis for personal liability. That proposed "test" is essentially an inarticulate enunciation of the doctrine of an undisclosed principal.

■ The evidence indicates that at the time plaintiffs purchased the hog feed supplement on September 13, 1977, they believed Chambers Feed and Supply to be a partnership. So far as the present record shows, plaintiffs had no actual or constructive notice that Edwin and Janice Chambers were merely representatives of the owner of Chambers Feed and Supply rather than the owners themselves. The evidence was, nevertheless, sufficient to demonstrate an agency between the corporation and the individual defendants. *See Lange v. Baker,* 377 S.W.2d 5 (Mo.App. 1964).

In *Lange,* the plaintiff instituted suit against the defendant for breach of contract. The defendant, who was an officer of the corporation, argued that the contract was between the corporation and the plaintiff. On appeal, defendant asserted that the evidence showed as a matter of law that defendant was at all times acting on behalf of the corporation, Trailback Plantation, Inc., and that the evidence was insufficient to justify the lifting of the corporate veil so as to hold the individual liable. The court disposed of the case without relying on the doctrine of piercing the corporate veil. One reason was the applicability of the doctrine of undisclosed principal:

[T]he record persuasively demonstrates and satisfactorily establishes that, regardless of any undisclosed intention on the part of defendant to act for the corporation in making the oral agreement, plaintiff had no actual or constructive knowledge of defendant's alleged status as an agent for Trailback Plantation, Inc. ... In other words, if defendant was acting for the corporation, plaintiff was unaware of such agency.... Thus, the instant case falls within the firmly-established doctrine that one who acts as agent for another in making a contract is liable individually if, at the time of making such contract, he fails to disclose his agency and the identity of his principal.

*Id.* at 9. *See also O'Fallon Lumber & Supply Company, Inc. v. Benear,* 589 S.W.2d 625 (Mo.App.1979).

The fact that the plaintiffs at trial incorrectly perceived and denominated their theory of recovery as "piercing the corporate

veil" in no way changes the fact that the evidence adduced at trial was sufficient to hold the individual defendants liable as agents of Chambers Feed & Supply Company, Inc. *Cf. Lange v. Baker, supra.* Moreover, the plaintiffs' amended petition and the jury instructions [3] were comprehensive enough to allow the imposition of liability on the individual defendants on the submitted theory of implied warranty of fitness.

■ Here, the defendants' liability, if any, resulted from the breach of an implied warranty of fitness of the hog feed supplement. But before defendants' liability on any theory could be submitted to the jury the preliminary question of defendants' exposure to that liability had to be decided by the trial court as a matter of law. Could plaintiffs maintain an action on their contract against the individual defendants, Mr. and Mrs. Chambers? The answer is, first, that under the corporate veil doctrine the defendants were exposed to liability if plaintiffs' evidence established some improper purpose of defendants. The second and alternative answer is that defendants were also exposed to liability if, without regard to their purpose, they acted for the corporation, as they maintained at trial, *and* failed to disclose their agency and the identity of their principal at the time of the sale. *Lange v. Baker, supra,* at 9–10. Therefore, had the plaintiffs tried their case to the court alone or had they tried it to the jury on the basis of the undisclosed principal theory, we could not affirm the judgment.

■ Our inquiry turns, therefore, to the proper disposition of this case. The plaintiffs failed to show an improper purpose in defendants' use of their corporation necessary to justify piercing the corporate veil.

Clearly, the plaintiffs proceeded upon a theory not supported by the evidence. Ordinarily, under such circumstances

> [t]he furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses.

*Zimmerman v. Associates Discount Corp.,* 444 S.W.2d 396, 398 (Mo.1969) (en banc), quoting *Smith v. Terminal R.R. Ass'n of St. Louis,* 160 S.W.2d 476, 479 (Mo.App.1942).

■ Accordingly, we must reverse the judgment and remand the case for a new trial. Had the plaintiffs sought to proceed against the individual defendants on the basis of their failure to disclose their principal to plaintiffs, the trial court might properly have permitted plaintiffs to proceed. We decline to hold, however, that this case would not and could not have been defended in some way that does not appear in the record if plaintiffs had sought to proceed against Mr. and Mrs. Chambers individually on the ground that they were individually liable for failure to disclose their undisclosed principal, their corporation. We doubt such a defense existed, but absent notice to defendants at trial we cannot say with certainty that a defense applicable to

---

**3.** INSTRUCTION NO. 6

Your verdict must be for plaintiffs if you believe:
First, defendants sold and and plaintiffs purchased the hog feed supplement, and
Second, when sold by defendants the hog feed supplement was not fit for one of its ordinary purposes, and

Third, plaintiffs used such hog feed supplement for such a purpose, and
Fourth, within a reasonable time after plaintiffs knew or should have known the product was not fit for such purpose, plaintiffs gave defendants notice thereof, and
Fifth, as a direct result of such hog feed supplement being unfit for such purpose, plaintiffs were damaged.

the undisclosed principal basis of liability was not available to them. In fairness to defendants, we cannot permit the judgment to stand simply because the trial court *could have* permitted plaintiffs to proceed against the individual defendants on the basis of defendants' liability for their undisclosed principal's conduct. In fact the parties and the court did not contemplate that basis for defendants' liability.

Upon retrial, in light of this disposition, the questions raised by appellants' second and third points on appeal are not likely to rise again. For the foregoing reasons, therefore, we reverse and remand this case to the trial court for new trial.

All concur.