**Sharlene MEDLOCK,
Plaintiff-Appellant-Cross-Respondent,**

v.

**FARMERS STATE BANK OF TEXAS COUNTY, et al.,
Defendant-Respondent-Cross-Appellant.**

Nos. 13579, 13580.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 27, 1985.

J. Max Price, John D. Beger, Price & Beger, Salem, John S. Beeler, Houston, Ronald D. White, Rolla, Thomas Hearne, Steelman, Hearne & Hearne, Salem, Joseph W. Rigler, Vienna, for plaintiff-appellant-cross-respondent.

Michael H. Maher, Schulz, Bender, Maher & Blair, Kansas City, for defendant-respondent-cross-appellant.

MAUS, Judge.

These appeals stem from the fact the defendant, Farmers State Bank of Texas County, did not obtain credit life insurance upon the life of the deceased husband of plaintiff, Sharlene Medlock. The underlying dispute was whether the defendant had agreed to cause such insurance to be issued to cover the unpaid balance of a note of the Medlocks payable to the defendant. The note was secured by a deed of trust upon

358 acres owned by the plaintiff and her husband.

The jury returned three verdicts. The first was for the plaintiff on the defendant's breach of such an agreement. It was in the amount of $44,744.38, the unpaid principal and interest of the note. The second verdict was in favor of the plaintiff for actual damages for what the parties have denominated the "attempted wrongful foreclosure" of the deed of trust. That verdict was in the amount of $25,000. The trial court refused to submit the issue of punitive damages by reason of such attempted wrongful foreclosure. The third verdict was upon the counter-claim of the defendant for the unpaid balance of the note. That verdict was in favor of the plaintiff.

Upon the defendant's motion, the trial court set aside the verdict for breach of contract in favor of the plaintiff. The assigned reason was that such verdict was inconsistent with the verdict in favor of the plaintiff upon the counter-claim. By her appeal, the plaintiff contends that action of the trial court was error. She also asserts error in the refusal to submit the issue of punitive damages. By its appeal, the defendant contends the trial court erred in not sustaining its motion for judgment notwithstanding the verdict for $25,000 for attempted wrongful foreclosure. It further asserts error because the trial court did not order a directed verdict on its counter-claim. The appeals have been consolidated for submission and disposition.

A summary of the facts necessary to frame the issues follows. Where necessary, the evidence will be recited in more detail in connection with the point of error being considered. The plaintiff and her husband were longtime customers of the defendant. The plaintiff and her husband lived in the rural community in which the defendant conducted its banking business. They were friends of some of the officers and employees of the bank. The plaintiff and her husband were farmers. Their home was on a 10-acre tract adjacent to the 358 acres, which they farmed. Over the years the husband conducted most of the parties' business with the defendant. Often, after consummating arrangements with the defendant, he would bring home notes for signature by the wife.

The plaintiff and her husband had from time to time borrowed money from the defendant. The loan resulting in the note in question was made on September 30, 1975. The note was in the amount of $31,402.75. The note called for interest at the rate of 9 percent and was due 12 months after date. The face of the note showed that of that amount, $2,283.84 was applied to prepaid interest, $570.96 to credit life insurance and the proceeds to the plaintiff and her husband were $28,547.98. At the bottom of the note a printed request for credit life insurance was "checked," with the notation, "age 43." There was an insurance agency in the bank owned by the holding company that owned the defendant. The defendant caused the request for credit life insurance to be issued through that agency.

In 1977, the plaintiff's husband commenced work on oil rigs in the Gulf of Mexico. By necessity, he was away from home for extended periods. Before leaving on one such occasion, the husband gave the wife a check from a cattle buyer for $6,000, the proceeds of the sale of cattle. He asked her to use the check in bringing their loans with the defendant to date. At that time the defendant held four notes executed by one or both of the parties. They were:

| Note Number | Due Date | Amount | Signed by |
|---|---|---|---|
| 6814 | November 1, 1979 | $31,402.78 | Both |
| 803 | December 29, 1979 | 11,457.24 | Plaintiff |
| 4276 | October 5, 1979 | 4,556.61 | Plaintiff |
| 2836 | November 27, 1979 | 2,000.00 | Plaintiff |

On November 26, 1979, the plaintiff went to the bank to carry out her husband's request. She dealt with Kay Jordan, an assistant cashier. The $6,000 check was deposited in the Medlock account. A check was drawn on that account in the amount of $5,000 payable to the defendant. The check was given to Jordan to be applied to the notes. The plaintiff told Jordan they wanted to renew the farm note, "The way it has always been."

Jordan calculated the interest to date on all notes was $907.40. She suggested the balance of the $5,000 be applied to pay note No. 2836 in full and to reduce the principal balance of note No. 4276. The plaintiff was aware of the fact they had carried credit life insurance on her husband's life in connection with note No. 6814. Because of the amount of prior premiums for that credit life insurance, the plaintiff was surprised at the amount available to be applied upon the principal of the notes. Jordan said she was sure her calculation was correct. The plaintiff agreed to the suggested application of the funds.

Jordan prepared three extension agreements for the notes not paid. The extension agreement pertaining to note No. 6814 extended the due date to November 1, 1980. It further provided for interest at the rate of 11.4 percent from the date thereof. It contained the printed statement, "All terms and conditions of the original note and any security thereto attached is fully incorporated herein and fully ratified except as specifically modified by this renewal agreement." Upon presenting the extension agreement to the plaintiff, after it had been signed by a bank officer, Jordan said everything will be the same except the interest would be 11.4 percent. The plaintiff signed the agreement without reading the printed statement. The plain-

tiff's husband signed the extension agreement the following week.

Plaintiff's husband was killed in a automobile accident on April 8, 1980. For many years prior to the purchase of the defendant by a holding company in 1978, E.L. Daugherty was chief executive officer of the defendant. After that time he was employed by the defendant in a limited capacity. He was a pallbearer for plaintiff's husband. Daugherty stopped at the Medlock home on his way to the funeral service. He asked the plaintiff if there was anything he could do. The plaintiff told him he could check and see what she needed for the credit life insurance. After checking at the bank, he returned to the Medlock home. He told the plaintiff there must be a mistake somewhere; he could not find any evidence of credit life. After November 1, 1980, the plaintiff received a notice demanding payment of note No. 6814. She did not make that payment. Attorneys for the plaintiff asked the defendant to cancel the note. The defendant obviously refused and caused notice to be published that the deed of trust on the 358 acres would be foreclosed by sale by the trustee on January 5, 1981. The plaintiff obtained a restraining order against that foreclosure sale.

The error asserted by the defendant's first two points is the failure of the trial court to sustain its motion for judgment notwithstanding the verdict for $25,000 for actual damages for attempted wrongful foreclosure. That verdict was rendered in response to the following instruction:

### Instruction No. 10

Your verdict must be for plaintiff and against defendant Bank of Raymondville now known as Farmers State Bank of Texas County if you believe:

First, that plaintiff and her husband Frank Medlock, Jr., entered into an agreement with the defendant Bank of Raymondville now known as Farmers State Bank of Texas County and the defendant breached that agreement as submitted in Instruction No. 7.

Second, as security for the promissory note, plaintiff and Frank Medlock, Jr. gave defendant Bank of Raymondville now known as Farmers State Bank of Texas County a deed of trust to their farm in Texas County, Missouri.

Third, that the note and deed of trust would not have been in default but for the defendant's failure to obtain credit life insurance on the life of Frank Medlock, Jr.

Fourth, that defendant knew that the note and deed of trust being in default was a direct consequence of their failure to obtain credit life insurance on the life of Frank Medlock, Jr.

Fifth, that the defendant intentionally began to foreclose, under the deed of trust, on the farm belonging to plaintiff.

Sixth, that plaintiff was thereby damaged.

As noted, the trial court entered judgment for the defendant on the issue of damages for breach of the agreement notwithstanding the verdict for the plaintiff for $44,744.38. The defendant first argues this was a conclusive determination the evidence was insufficient to establish the agreement submitted in Instruction No. 10. That action of the trial court did not constitute such a determination. As stated by its order, that action was taken because the trial court determined that verdict was inconsistent with the verdict on the defendant's counter-claim.

■ The defendant next argues that in fact the evidence was insufficient to establish that agreement. To support that argument, the defendant emphasizes evidence such as the following. On November 26, 1979, the subject of credit life insurance was not mentioned. The plaintiff renewed other loans without obtaining credit life insurance, even though such insurance had previously been carried in connection with those loans. The plaintiff placed no reliance upon the printed phrase in the extension agreement quoted above. On November 26, 1979, the plaintiff received receipts showing how the $5,000 had been applied to the four loans and that no part thereof was applied to a premium for credit life insurance. The plaintiff realized no premium had been paid. She did not expect to obtain such insurance for nothing. The plaintiff did not at that time or later receive confirmation of such life insurance as the parties had received on prior occasions.

This argument and emphasis ignores evidence favorable to the plaintiff. There was evidence from which the jury could reasonably reach the following conclusions. On November 26, 1979, the plaintiff offered to renew the loan evidenced by note No. 6814 upon the same terms as it always had been, which offer included the defendant causing credit life insurance to be issued as the bank had done when the note was originally made and upon prior renewals. The bank impliedly accepted that offer by the receipt and application of the $5,000. It expressly accepted that offer when Jordan stated to the plaintiff, "Sharlene, everything will be the same as it has always been. The only difference will be, your interest will be 11.4 instead of 9 percent." The failure of the plaintiff to analyze the receipts and documents involved was due to the trust she placed in the employees of the defendant. The fact no premium was deducted and the requested insurance was not obtained to carry out the agreement was a mistake on the part of the bank. This evidence supports the determination of the jury there was such an agreement.

The defendant next contends there was no substantial evidence of damages to support the verdict of $25,000 rendered under Instruction No. 10. The plaintiff counters by reference to the fact a prospective buyer of the 358 acres backed out because of the commencement of foreclosure proceedings. However, there was no evidence to

establish any financial loss because of this fact.

The defendant also cites testimony of the plaintiff that upon the commencement of the foreclosure proceedings, she was embarrassed, became nervous and had an irregular heartbeat. She said that at the time of trial, she still was nervous, had stomach trouble and difficulty in sleeping. Her complaints are those that have been categorized by the cases as "emotional distress." As those terms are used in this opinion, they will refer to such complaints not accompanied by any physical injury. Such complaints cannot be considered as supporting the verdict unless emotional distress is an element of damages of the cause of action established by the evidence and submitted by Instruction No. 10.

The general subject of recovery for emotional distress is the subject of Annot., Torts—Emotional Disturbances, 64 A.L.R.2d 100 (1959). That annotation appropriately observed, "The case law in the field here treated is in an almost unparalleled state of confusion and any attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity." 64 A.L.R.2d at 103, supra. There is a recent annotation on a related subject, Annot., Mental Anguish Caused by Wrongful Execution, 83 A.L.R.3d 598 (1978). Related annotations are listed therein.

An early statement of the law on this subject in Missouri was, "The general rule is that 'pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice, insult or inhumanity.'" Trigg v. The St. Louis, Kansas City & Northern Railway Company, 74 Mo. 147, 153 (1881). This rule has often been applied and followed. Williams v. School District of Springfield R-12, 447 S.W.2d 256 (Mo.1969); Smith v. Aldridge, 356 S.W.2d 532 (Mo.App.1962). It has been restated, "The rule is well established that, in the absence of evidence of an unlawful invasion of one's rights under circumstances of malice, wilfulness, wantonness, or inhumanity, there is no recovery for fright, terror, anxiety, mental distress or nervousness, unless these are accompanied by some physical injury." Langworthy v. Pulitzer Publishing Company, 368 S.W.2d 385, 390 (Mo.1963).

A general exception to that rule has been recognized in Pretsky v. Southwestern Bell, 396 S.W.2d 566 (Mo.1965). That case approved recovery under Restatement (Second) of Torts § 46 (1965). That section provides for recovery for severe emotional distress as a distinct tort as distinguished from an element of damages in an independent tort. "This Section is concerned only with emotional distress which is inflicted intentionally or recklessly." Restatement (Second) of Torts § 46, Comment a. "As indicated in Chapter 47, emotional distress may be an element of damages in many cases where other interests have been invaded, and tort liability has arisen apart from the emotional distress." Restatement (Second) of Torts § 46, Comment b. That section in part provides:

> § 46. Outrageous Conduct Causing Severe Emotional Distress (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

This doctrine has been construed and applied in cases such as Williams v. School District of Springfield R-12, supra; Frye v. CBS, Inc., 671 S.W.2d 316 (Mo.App. 1984); Wilt v. Kansas City Area Transportation Authority, 629 S.W.2d 669 (Mo. App.1982); Leonard v. Pioneer Finance Co., 568 S.W.2d 937 (Mo.App.1978); Watson v. Franklin Finance, 540 S.W.2d 186 (Mo.App.1976).

A recent case approved recovery for emotional distress based upon negligence when "(1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be

of sufficient severity so as to be medically significant." *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–773 (Mo. banc 1983). That case further holds that the issue of whether or not plaintiff's emotional distress was of sufficient severity to be legally cognizable is a matter for jury determination. *Bass v. Nooney Co.*, supra. Also see *Harrison v. Weller*, 423 S.W.2d 226 (Mo.App. 1967). The requirement the emotional distress be medically diagnosable and of sufficient severity to be medically significant as announced by that case, has been applied when emotional distress is asserted as an element of damage as a result of an independent tort or as a result of outrageous conduct. *Young v. Stensrude*, 664 S.W.2d 263 (Mo.App.1984). It has also been suggested that the doctrine of *Bass v. Nooney Co.*, supra, supersedes the restriction of willfully or maliciously expressed in *Walsh v. Ingersoll-Rand*, 656 F.2d 367 (8th Cir. 1981). *Robinson v. Highway Management Systems, Inc.*, 583 F.Supp. 1558 (W.D.Mo. 1984).

In this connection, without acknowledgment of the stated general rule, recovery for emotional distress has been allowed as an element of damage caused by certain independent intentional torts even though there has been no impact or bodily injury. For example, such recovery has been recognized in actions such as false imprisonment, *Warrem v. Parrish*, 436 S.W.2d 670 (Mo.1969); for conspiracy to deprive a parent of the custody of a child, *Kramer v. Leineweber*, 642 S.W.2d 364 (Mo.App.1982); for an invasion of privacy, *Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212 (Mo.App.1978); for libel, *McQuoid v. Springfield Newspapers, Inc.*, 502 F.Supp. 1050 (D.C.Mo.1980); and for malicious prosecution, *Young v. Jack Boring's Inc.*, 540 S.W.2d 887 (Mo.App.1976). This right of recovery does not extend to all intentional torts. For example, "This rule is consistent with Missouri cases which have held that no recovery is allowed for mental suffering in fraud cases, absent physical injury, unless the tortfeasor acted willfully or maliciously." *Walsh v. Ingersoll-Rand Co.*, supra, at 371. See 38 Am.Jur.2d

Fright, Shock and Mental Disturbance, § 29 (1968).

While not expressly so stated, such cases lead to the conclusion that an important, perhaps decisive factor in determining in which independent torts such recovery will be permitted is whether or not the tort involves an intentional invasion of rights and a degree of actual malice or conscious wrongdoing. Also an important factor is whether or not emotional distress is the natural and probable consequence of the independent, intentional tort. *Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700 (Mo.App.1978); *Jones v. Phillips Petroleum Co.*, 186 S.W.2d 868 (Mo.App.1945). Compare Restatement (Second) of Torts § 435B (1965).

Within the statement of the general rule, recovery for emotional distress as an element of damage is approved when an independent tort is committed under circumstances of malice, willfulness, wantonness or inhumanity. *Langworthy v. Pulitzer Publishing Company*, supra. "We also note that, although plaintiffs do not rely on such theory, the petition here might be considered to state a cause of action for trespass to personal property, accompanied by such circumstances of inhumanity, oppression, humiliation and embarrassment as will render defendants liable for emotional distress, in the absence of physical injury." *Warrem v. Parrish*, supra, at 674.

As noted, the parties refer to Instruction No. 10 as submitting attempted wrongful foreclosure. Missouri recognizes a cause of action for what has been termed wrongful foreclosure. That cause of action is ill defined. Concerning wrongful foreclosure, it has been astutely observed, "The best that can be said is that the authorities cannot be fully reconciled, and an examination of the topically collated cases to discover the true basis of legal liability in such actions obscures as much as it clarifies." *Spires v. Lawless*, 493 S.W.2d 65, 71 (Mo.App.1973), 69 A.L.R.3d 62. It has been declared such a cause of action exists only

when a foreclosure sale was void. *Spires v. Lawless,* supra. Other cases indicate it exists whether the sale was void or voidable. *Donovan v. Frick,* 458 S.W.2d 282 (Mo.1970); *Kennon v. Camp,* 353 S.W.2d 693 (Mo.1962).

The defendant argues that since Instruction No. 10 does no more than submit an attempted wrongful foreclosure, the measure of damages cannot exceed that applicable to a consummated unlawful foreclosure. That measure of damages has been declared to be "the difference between reasonable market value of the property and the aggregate amount of the liens thereon at the date of the foreclosure sale." *Edwards v. Smith,* 322 S.W.2d 770, 777 (Mo.1959). Therefore, the defendant argues there is no evidence of damage to support Instruction No. 10.

This argument is not persuasive. The measure of damages quoted above had its origin in cases based upon a breach of contract. "But it was not bound to pursue this remedy, for it had a right to maintain its action at law to recover damages for breach of the contract to extend the time of payment, and it follows, as day follows night, that in its action at law the measure of its damages is the value of its equity in the property." *Missouri Real Estate Syndicate v. Sims,* 121 Mo.App. 156, 98 S.W. 783, 786 (1906). Also see *Missouri Real Estate Syndicate v. Sims,* 179 Mo. 679, 78 S.W. 1006 (1904). That measure of damages is not appropriate to a willful misuse of a power of sale. *Morse v. Mutual Federal S. & L. Ass'n of Whitman,* 536 F.Supp. 1271 (D.Mass.1982).

In terse opinions it has been held there is no cause of action for attempted wrongful foreclosure. *Aetna Finance Co. v. Culpepper,* 171 Ga.App. 315, 320 S.E.2d 228 (1984); *Port City State Bank v. Leyco Construction Co.,* 561 S.W.2d 546 (Tex. Civ.App.1977). Other cases recognize such cause of action. *Brown v. M. & J. Finance Corporation,* 269 N.C. 255, 152 S.E.2d 97 (1967). In a case in which a mortgagor had, in bad faith, attempted to wrongfully foreclose to collect returned checks, it was

declared: "There can be no problem with the mental damages amounts. Where defendant's wrongful acts were a willful misuse of its statutory power of sale, and could be expected to humiliate and distress plaintiffs, they may recover compensation for mental suffering." *Morse v. Mutual Federal S. & L. Ass'n of Whitman,* supra, at 1280.

However, the defendant has not by a point relied on questioned the existence of a cause of action for attempted wrongful foreclosure. Nor does the defendant attack Instruction No. 10 for not properly submitting the elements of an attempted wrongful foreclosure. Compare *Morse v. Mutual Federal S. & L. Ass'n of Whitman,* supra. The existence of such a cause of action and a definition of its elements and the propriety of an instruction submitting the same are questions not to be decided in this case. This opinion should not be construed as doing so.

■ For the purpose of this opinion, accepting the proposition that the same is a tort within the category of wrongful interference with property, it is not every attempted wrongful foreclosure that admits of recovery for emotional distress. Emotional distress of the severity required to be legally cognizable is not the natural and probable consequence of the cause of action submitted by Instruction No. 10. Nor does an attempted wrongful foreclosure necessarily involve an element of conscious wrongdoing. Consistent with the long established limitation, recovery for emotional distress from an attempted wrongful foreclosure cannot be had unless such an invasion of a property owner's rights occurs "under circumstances of malice, wilfulness, wantonness, or inhumanity, ...." *Langworthy v. Pulitzer Publishing Company,* supra, at 390. That limitation encompasses conscious wrongdoing. It also includes acting with such reckless indifference to the rights of the property owner that the law will imply intentional wrongdoing. *Golston v. Lincoln Cemetery, Inc.,* supra. It could be argued that paragraph Fourth of Instruction No. 10 submits that element.

That argument is unpersuasive. But, even if accepted, such an argument does not aid the plaintiff. There is no evidence to support the element of conscious wrongdoing. The undisputed evidence which was emphasized by the plaintiff, demonstrates the absence of evidence to find other than the defendant was acting in good faith. This was conceded in her closing argument by the statement, "[t]here is an honest dispute in this case." There is no competent evidence of damages cognizable under Instruction No. 10.

■ By its third point the defendant contends the trial court erred in not sustaining its motion for judgment on the counter-claim. Generally, a verdict may not be directed for one who bears the burden of proof.

> There is, however, a well-recognized exception to the rule. If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, ....

*Coleman v. Jackson County,* 349 Mo. 255, 160 S.W.2d 691, 693 (1942). The plaintiff admitted her liability for the principal and interest on the note by her petition, by admissions in her opening and closing statements to the jury and by submitting Instruction No. 10. It was the duty of the trial court to set aside the verdict on the counter-claim and enter judgment for the defendant for the principal of and interest due on the note. See *Commerce Trust Company v. Howard,* 429 S.W.2d 702 (Mo. 1968).

By her first point, the plaintiff contends the trial court erred in not submitting the issue of punitive damages in connection with Instruction No. 10. The disposition of the defendant's first and second points establishes the trial court did not so err.

By her second point, the plaintiff contends the trial court erred in setting aside the verdict in her favor for breach of the alleged agreement. As noted, the trial court did so because that verdict was inconsistent with the verdict on the counter-claim. The basis of such inconsistency has been removed. There was sufficient evidence to support the verdict for the plaintiff for breach of the agreement. The judgment for the defendant on that issue should not stand.

The judgment for the defendant on the issue of damages for breach of the agreement is reversed and the trial court is directed to enter a judgment on that count for the plaintiff in accordance with the verdict. The judgment for the plaintiff on the counter-claim is set aside and the trial court is directed to enter a judgment on the counter-claim for the defendant in the amount of the principal and interest due on the note at the time of trial. The trial court shall enter those judgments as of the date of the trial. *Plum v. City of Kansas,* 101 Mo. 525, 14 S.W. 657 (1890). The judgment on the counter-claim is on a note providing for interest at 11.4 percent per annum and the judgment should expressly provide it shall bear interest at the rate of 11.4 percent per annum. § 408.040, RSMo (Supp.1984). It is by this court determined that by reason of the peculiar circumstances of this case, the judgment for the plaintiff for breach of the agreement is a judgment for breach of a contract providing for interest at 11.4 percent per annum within the meaning of § 408.040. That judgment for the plaintiff should expressly provide that it bears interest at the rate of 11.4 percent per annum.

The judgment for the plaintiff on the count under which an attempted wrongful foreclosure was submitted to the jury is reversed. However, because the issues presented under that count were of first impression, this court in the exercise of its discretion determines that such judgment should not be so reversed without remanding the cause for further proceedings under that count in accordance with the doctrine set forth in *Zimmerman v. Associates Discount Corporation,* 444 S.W.2d 396 (Mo. banc 1969) and *Fairbanks v. Chambers,* 665 S.W.2d 33 (Mo.App.1984).

The cause is remanded to the trial court for further proceedings consistent with this opinion.

PREWITT, C.J., HOGAN, P.J., and CROW, J., concur.