**STATE of Missouri ex rel. Jeremiah W. (Jay) NIXON, Attorney General, Respondent,**

v.

**RCT DEVELOPMENT ASSOCIATION, et al., Appellants.**

**No. WD 69789.**

Missouri Court of Appeals, Western District.

June 16, 2009.

Shane L. Farrow, Jefferson City, MO, for Appellants.

Michael J. Wambolt, Kansas City, MO, for Respondent.

Before THOMAS H. NEWTON, C.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

THOMAS H. NEWTON, Chief Judge.

Mr. Russell Rose, Ms. Chris Ann McPherson, and Mr. Timothy Divers (Defendants) appeal from the trial court's judgment concluding they had violated section 407.020 of the Missouri Merchandising Practices Act (MPA) in connection with soliciting charitable donations. The court granted the Attorney General's request for a preliminary and permanent injunction and found Defendants jointly liable for restitution, civil penalties, and payment of $8,507 for the Attorney General's costs of investigation and prosecution. We affirm in part, reverse in part, and remand.

**Factual and Procedural Background**

RCT Development Association, Incorporated (RCT, Inc.) was incorporated in the State of Kansas in July of 2007. In November of 2007, Defendants registered the fictitious names "RCT Development Association" (RCT) and "Helping Our Heroes" (HOH) in Missouri. Both name registrations listed an Independence, Missouri, address and were signed by Mr. Rose. Defendants were listed as the owners of RCT, with Mr. Rose having fifty percent ownership, Ms. McPherson having forty-one percent, and Mr. Divers having nine percent. RCT was listed as the owner of HOH.

In the fall of 2007, RCT began soliciting donations in Missouri through professional fundraisers. A website, helpingouramericanheroes.com, was also set up to solicit donations. In December of 2007, "Helping Our Heroes, Inc." (HOH, Inc.) registered as a charitable organization with the Missouri Attorney General's Office, even though the corporate entity had not yet been established. A charitable organization registration statement was also filed with the Attorney General's Office for "RCT Development Association, Inc.," but it was refused as incomplete. In January of 2008, the entities "RCT Development Association, Incorporated" and "Helping Our Heroes, Incorporated" incorporated in Missouri.

In February of 2008, in response to complaints, the Missouri Attorney General's Office investigated RCT, HOH, and the website helpingouramericanheroes.com. Its investigation revealed a number of discrepancies. The website stated that HOH was a division of RCT and assisted veterans in obtaining transitional housing and down payment assistance. The site also stated that it was a 501(c)(3) charity, indicating that donations were tax deductible. Neither HOH or RCT, however, had status with the IRS as a tax-exempt charity. A page titled "Where Your Money Goes" displayed a scan of a charitable organization form from the Missouri Attorney General's Office and stated that it was HOH's annual report to the Attorney General for 2007, though it had not been filed. The form listed funds collected as $8,344.16, and indicated that one hundred percent of the funds had been allocated to fundraising. The site also included the name and telephone number for a registration specialist at the Missouri Attorney General's Office and invited visitors to contact her for verification. A news page on the site thanking donors for their Christmas contributions listed 79 individuals and organizations.

The Attorney General's Office served a civil investigative demand on Mr. Divers and discussed the discrepancies with him. When its investigator next visited the website, the website explained that its 501(c)(3) status was in progress. On a subsequent visit, the website stated that HOH was a not-for-profit corporation rather than a division of RCT, and the dollar amount on the charitable organization form changed to $7,252.16.

The Attorney General filed a petition alleging violations of the MPA, section 407.020, which prohibits, *inter alia*, mis-

representation in connection with soliciting charitable funds. Defendants sought to dismiss the petition against them as individuals, claiming they were protected through the Kansas corporation, RTC, Inc., and the later created Missouri corporation, RCT Development Association, Inc. The Attorney General, however, alleged that at all times relevant to the petition, Defendants were soliciting donations under the names of associations and thus did not enjoy corporate protections. Defendants' motion to dismiss was denied.

At a hearing, in addition to the facts discussed, two individuals testified to being solicited for donations. The first witness, an attorney, stated that he was called on November 13, 2007, by a woman who said she was with "RCT Development." When he asked whether the organization was a 501(c)(3) charity because he was concerned about the donation being tax-deductible, the woman said yes. She also told him no portion of his donation would go to fundraising activities. The second witness, the service manager at an auto shop, testified that he was called shortly before Christmas 2007 and asked to donate to HOH. He gave a check for a $25 donation, which he was told would feed five veterans on Christmas Day.

The trial court found the MPA had been violated by Defendants in that: HOH was misrepresented as a not-for-profit corporation when it was on file as a fictitious name registration rather than a corporation; HOH was misrepresented as a tax-exempt 501(c)(3) charity; donors were deceived into believing the Missouri Attorney General's Office endorsed their fundraising because of the inclusion of forms using its name, seal, address, phone number, and email—and separately because the helpingouramericanheroes.com website referenced an Attorney General's Office employee by name and phone number; and donors were led to believe their donations would help homeless veterans obtain housing when in fact all donations were spent on fundraising.

The trial court granted the Attorney General's request for a preliminary and permanent injunction and entered judgment. RCT, HOH, and Defendants were found jointly liable for $8344.16 in restitution to donors, payable to the Merchandising Practices Restitution Fund; $5,000 in civil penalties; and $8,507 to the State of Missouri for its costs of investigation and prosecution. This appeal followed.

## Standard of Review

Our review of this court-tried case is under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *State ex rel. Webster v. Cornelius,* 729 S.W.2d 60, 63 (Mo.App. E.D.1987). We affirm the judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We view the evidence in the light most favorable to the judgment, make all reasonable inferences in its favor, and ignore contrary inferences. *State v. Shaw,* 847 S.W.2d 768, 771 (Mo. banc 1993).

## Legal Analysis

■ In their first point, Defendants dispute the judgment finding them individually liable for MPA violations. They contend (1) they are not responsible for the actions of RCT, Inc., which was at all times a Kansas corporation, (2) no evidence was presented showing Defendants personally misrepresented the organizations, and (3) no evidence was presented showing Defendants were personally liable through an agency theory.

■ The MPA's objective is consumer protection. *Gibbons v. J. Nuckolls, Inc.,* 216 S.W.3d 667, 669 (Mo. banc 2007). The chapter prohibits:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose ...

§ 407.020.[1] MPA violations result from a defendant's conduct rather than a defendant's intent. *State ex rel. Webster v. Eisenbeis*, 775 S.W.2d 276, 278–79 (Mo. App. E.D.1989).

■ Where the legislature provides a statutory definition for a term, it supersedes any commonly accepted or judicially defined meaning of that term. *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 798 (Mo.App. W.D.2003). A "person" prohibited from unlawful practices under the MPA is:

any natural person or his legal representative, partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof[.]

§ 407.010(5). Thus, MPA violations may be committed by both entities and individuals. *See Gibbons*, 216 S.W.3d at 669.

The trial court found Defendants jointly liable for five specific violations of the MPA in the solicitation of charitable donations. The record reflects that each of these violations may be attributed to RCT or HOH—not RCT, Inc. The evidence does not support that donors were being solicited by a Kansas corporation acting in Missouri. Nor is the fact that Defendants also owned RCT, Inc. determinative; a shared identity of owners does not by itself result in an identity of interest between entities. *See, e.g., Renaissance Leasing, LLC. v. Vermeer Mfg. Co.*, No. WD68929, —— S.W.3d ——, 2009 WL 1181498, at *5 (Mo.App. W.D. May 5, 2009).

■ The evidence also does not show that RCT, Inc. was a parent of any entity in Missouri. The purpose of fictitious name registration is to prevent fraud and inform the public of the identity of those with whom they are dealing. *See Kusnetzky v. Security Ins. Co.*, 313 Mo. 143, 281 S.W. 47, 49 (1926). Nowhere on the fictitious name registrations for RCT or HOH does the Kansas corporation "RCT, Inc." appear. Rather, Defendants registered RCT as a fictitious entity and listed themselves individually as its owners. They then registered HOH under the name RCT and commenced soliciting donations.[2]

■ "Unincorporated associations have no entity status beyond the status of those persons who comprise the association."

1. All statutory references are to RSMo 2000 and the Cumulative Supplement 2008.

2. While Appellants rely on *Fairbanks v. Chambers*, 665 S.W.2d 33, 36–37 (Mo.App. W.D. 1984) to argue that the failure to include 'Inc.' or some other indication of corporate status in a corporate name does not negate corporate protections, their reliance is misplaced. *Fairbanks* dealt with the equitable doctrine of piercing the corporate veil. In that case, the court merely states that "technical statutory noncompliance" with naming requirements in all of the company's representations is not enough to cause the loss of corporate protections. *Id.* at 37. Rather, because the doctrine of piercing the corporate veil is founded in equity, an improper purpose in using the corporate cloak must also be shown. *See id.* at 38–39. The *Fairbanks* court then went on to hold that the defendant could be held liable under an undisclosed principal theory. *Id.* at 40; *see also Grote Meat Co. v. Goldenberg*, 735 S.W.2d 379, 384–85 (Mo.App. E.D.1987) (discussing liability under the undisclosed principal theory). Here, however, Appellants were not acting through any corporate entity in Missouri.

*Exec. Bd. of the Mo. Baptist Convention v. Carnahan,* 170 S.W.3d 437, 445 (Mo.App. W.D.2005). Consequently, RCT and HOH were not legal entities separate from Defendants.[3] On these facts, we conclude that Defendants' ownership of a distinct Kansas corporation during the timeframe does not insulate them from individual liability, nor did the trial court err in finding Defendants jointly liable for the MPA violations. Defendants' first point is denied.

### Award of Attorney General's Costs

■ In their second point, Defendants argue that the trial court erred in awarding $8,507 to the Attorney General pursuant to section 407.130 for its costs of investigation and prosecution because no evidence was offered to support the amount. Section 407.130 provides:

> In any action brought under the provisions of section 407.100, the attorney general is entitled to recover as costs, in addition to normal court costs, the cost of the investigation and prosecution of any action to enforce the provisions of this chapter.

The State contends that, even if Defendants' argument is true, the trial court had statutory authority to award a discretionary amount under section 407.140, which establishes the Merchandising Practices Revolving Fund. Section 407.140(3) provides:

> In any case in which the court awards damages as provided in section 407.100, there shall be added, in addition to restitution and costs, an amount equal to ten percent of the total restitution awarded, *or such other amount as may be agreed upon by the parties or awarded by the court,* which amount shall be paid into

the state treasury to the credit of the merchandising practices revolving fund. (Emphasis added.)

■ Despite the broad language of section 407.140(3), we must agree with Defendants. The trial court's order makes clear that its order to pay $8,507 was under the authority of section 407.130: the amount was awarded "for the costs [the Attorney General] incurred investigating and prosecuting this lawsuit." However, no evidence appears in the record to support the amount of $8,507. "It is well established that, as a general rule, a judgment must be supported by legally adduced evidence." *Epperson v. Eise,* 167 S.W.3d 229, 231 (Mo.App. E.D.2005). Moreover, section 407.130 is punitive in nature. *Cornelius,* 729 S.W.2d at 66. As a result, it must be strictly construed. *See Cook v. Burke,* 693 S.W.2d 857, 861 (Mo.App. W.D.1985).

In *State ex rel. Webster v. Areaco Inv. Co.,* the Eastern District remanded an award under section 407.130 because an affidavit from the Attorney General's office filed after the hearing was insufficient to support the award and because the defendant was entitled to an opportunity to challenge the amount. 756 S.W.2d 633, 637 (Mo.App. E.D.1988). By contrast, in *State v. Polley,* we affirmed an award under section 407.130 precisely because the State had presented evidence supporting the costs at trial. 2 S.W.3d 887, 895 (Mo. App. W.D.1999). Consequently, because there is nothing in the record supporting the award of $8,507 and since the Defendants were entitled to an opportunity to challenge the amount, we find in accord with *Areaco* that while "[i]t is clear from the record that the Attorney General has incurred some statutorily recoverable

---

**3.** Although Appellants later incorporated new entities in Missouri, the restitution awarded reflects donations collected for HOH in 2007. Nor have Appellants shown that the MMPA violations were in fact committed by later-created corporate entities rather than RCT and HOH.

costs," we must remand for evidence of those costs. *See* 756 S.W.2d at 637.

## Conclusion

The award of $8,507 is reversed and remanded. The judgment is otherwise affirmed.

LOWENSTEIN and SMART, JJ., Concur.